## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Mary Kaplan et al.

v.

Richmond Fixture & Equipment Co. et al.

October 31, 1969

Case No. 1306

BY JUDGE ALEX H. SANDS, JR.

While defendants' motion to set aside the verdict in this case contains eleven grounds, there are actually but four principal contentions, i.e.:

(1) Error of the Court in permitting the adding of a resident administrator to the original parties plaintiff and in failing to grant defendants' motion for continuance after such party was added.

(2) Error of the Court in taking defendants' counterclaim from the jury.

(3) Erroneous granting and refusal of certain instructions.

(4) Excessiveness of the verdict.

These grounds will be considered in the order named.

### Action of Court in Adding Necessary Party Plaintiff

This action was instituted in the names of Mary Kaplan, Jerome Kaplan, and Edward Kaplan, Executors and Trustees under the will of Charles I. Kaplan, deceased, t/a The Berkshire Apartments, as parties plaintiff. After two days of trial, after both sides had rested and after the Court had heard argument upon and overruled defendants' motions to strike plaintiffs' evidence, defendants came forward with a final motion that the case be dismissed as having been brought and maintained by foreign personal representatives contrary to the provisions of § 26-59 of the Code of 1950, as amended. Argument upon the motion was adjourned over until the following morning, at which time plaintiffs presented a certificate from the Circuit Court of Arlington County showing the qualification in that Court

of a resident personal representative and moved that such resident personal representative be added as a party plaintiff, which motion over the objection of defendants was sustained by order then entered.

Plaintiffs' position as relates to this action of the Court is threefold, namely (1) that the appointment of the resident personal representative was untimely, (2) that after the adding of the new party defendants were not given an opportunity to answer as to such new party, and (3) that the resident personal representative was not properly qualified under the applicable statutory provisions.

Defendants first contend that the provisions of § 26-59 are jurisdictional and that since the amendment of 1950[1] added the words "or act" to the section as formerly drafted, that the action as instituted was void *ab initio* and that no subsequent amendment by addition of parties could breathe life into the action. The merit of defendants' position depends upon whether the prohibition of § 26-59 is jurisdictional (involving jurisdiction of the subject matter) or whether it is merely procedural (involving jurisdiction over the parties only).

In *Andrews v. Cahoon*, 196 Va. 790 (1955), the Court was concerned with the exact character of incapacity as that with which we are here concerned. A foreign administrator, contrary to the provisions of § 26-59, instituted a tort action in Virginia which went to judgment in favor of the non-resident administrator. The judgment rendered in this case was the subject of a claim against the receiver in a receivership proceeding involving the insolvent company insuring the defendant in the action in which the judgment had been rendered. On appeal from a ruling of the lower court disallowing the claim, the point was raised for the first time as to the incapacity of the plaintiff non-resident administrator to have sued in the first instance. A reading of the appellees' brief at page 15 shows that the identical argument was made in the Court of Appeals and upon the identical grounds here asserted by defendants, i.e. that the non-resident administrator could not under § 26-59 maintain the action and that the incapacity thus created was a *jurisdictional defect* which rendered the judgment void.

The Supreme Court was thus squarely confronted with the question of whether the incapacity created by § 26-59 was jurisdictional, i.e. involving jurisdiction of the subject matter as opposed to jurisdiction over the par-

---

[1] The section now reads: "Non-resident fiduciaries must have resident co-fiduciaries. No natural person not a resident of this state shall be appointed or allowed to qualify *or act* as personal representative." (Emphasis added.)

ties, or procedural in nature, i.e. involving, at most, jurisdiction over the parties. If jurisdictional the Court would have to have entertained the objection and ruled the judgment void, but if procedural or involving merely jurisdiction over the person, the Court was free to refuse to consider the point as not having been timely raised, for as a former Supreme Court of Appeals of Virginia had ruled:

> When want of jurisdiction arises from formal defects in the process, or when the want of jurisdiction is over the person, it must be taken advantage of in the early stage of a cause. But when the cause of action is not within the jurisdiction granted by law to the tribunal, the Court will dismiss the suit at any time when the fact is brought to its notice. *Western Union Telegraph Co. v. Pettyjohn*, 88 Va. 296 at p. 298 (1891).

The Court refused to consider the objection going to the incapacity of the plaintiff to sue, raised for the first time on appeal. See also *Lucas v. Biller*, 204 Va. 309 (1963); *Davis v. Marr*, 200 Va. 479 (1959); Burks, Pleading & Practice (4th ed.) p. 349; *Crawley v. Glaze*, 117 Va. 274 (1915).

As to the action of the Court in permitting the addition, as a necessary party, of the resident personal representative, after institution of the action, this procedure has been specifically approved in other jurisdictions. *Gross v. Hocker*, 51 N.W.2d 466 (Iowa 1952); *Leahy v. Haworth*, 141 F. 850 (8th Cir. 1905). See also 34 C.J.S. at page 1257.

The cases relied upon by defendants have been reviewed and are not found to be concerned with the problem here before the Court. Typical is *Gorenson v. Capitol Airlines, Inc.*, 221 F. Supp. 820 (E.D. Va. 1963), decided by Judge Butzner. This case turns entirely upon the interpretation of that part of 28 U.S.C. § 1404(a) which permits transfer of a case from one district or division to another "where it (the action) might have been brought," Judge Butzner holding that this language permitted transfer only if the plaintiff *at the time of the commencement of the action* had an independent right to institute suit in the transferee district, this being the sole test.

For the above reasons it is believed that the Court properly permitted the addition of the Virginia personal representative as a party plaintiff in the instant case.

Defendants next argue that the Court, after adding the resident personal representative as a party plaintiff, erred in refusing to continue the case

and allow defendants twenty-one days within which to file a responsive pleading to the action as amended by the addition of a new party plaintiff. The fallacy of this argument is that it ignores the fact that no new or different issues were injected into the case by such addition, all rights of the party added being derived from and limited by such rights as were possessed by the non-resident plaintiffs. The simple answer to this argument of defendants is that the addition of this party brought into the case nothing to answer.

Finally defendants contend that the resident personal representative was not properly appointed in the Circuit Court of Arlington County. Aside from the fact that this contention involves primarily a matter only of semantics, i.e., a distinction drawn between the word "appoint" and the word "qualify," the certificate upon its face appears perfectly regular. If, however, there is any merit in the defendants' contention, the letters issued by the Clerk of Arlington County, regular on their face must be attacked, if at all, in Arlington County and not in the instant proceeding. *Beavers v. Beavers*, 185 Va. 418 (1946).

### Court's Action on Counterclaim

At the time of the filing of the grounds of defense, defendants filed a counterclaim in the amount of $50,000.00 seeking damages allegedly flowing from a breach of contract upon the part of plaintiffs and an alleged wrongful levy made by plaintiffs upon defendants' property.

At the conclusion of all of the evidence and after both parties had rested, plaintiffs moved to strike the counterclaim upon the ground that no evidence had been introduced by defendants in support thereof. At this juncture it was perfectly apparent that no evidence of any character had been introduced as to any damage resulting from any alleged acts of plaintiffs. Defendants thereupon moved the Court to reopen the case and permit defendants to introduce evidence of damages in support of the counterclaim. The Court denied this motion but, rather than strike the defendants' evidence as to the counterclaim, the Court dismissed it without prejudice to the right of defendants to bring a separate action thereon. Technically the Court should have granted plaintiffs' motion and struck the counterclaim thus disposing of it adversely to defendants' interest. Since the action of the Court was favorable to defendants, they should not be heard to complain and the plaintiffs, the only parties adversely affected, did not except to the Court's ruling.

*Instructions*

While defendants have preserved exceptions to the action of the Court in granting and refusing a number of instructions their chief complaint as to instructions appears to center around the giving of Instruction X prepared by the Court which defendants contend is in conflict with the Instruction B, requested by the defendants and given at their instance.

Instruction B merely told the jury that the language of the contract, as it related to that portion thereof which concerned the repurchase provision, was ambiguous and, therefore, subject to construction by the jury. The sole point of ambiguity was, of course, the intent of the parties as to what was meant by the word "repurchase" as used therein. Instruction B correctly stated the principles which should govern the jury in their attempt to arrive at this interpretation. In view of the fact that it was the *defendants* who offered Instruction # 8 telling the jury that they should resort, among other things, to parol negotiations between the parties to clear up the ambiguous language, the Court is at a loss to understand defendants' argument at page 9 of their brief that the Court was in error in permitting the jury to consider parol evidence.

Contrary to defendants' contention, Instruction X in no manner interprets that part of the contract as to which any ambiguity exists, namely the provision relating to the repurchase of the equipment, as distinguished from repurchase of the note, which is the ambiguity dealt with in Instruction B. The first part of Instruction X merely lists the conditions precedent to the coming into being of any duty upon defendants to repurchase anything. The uncontradicted evidence in the case establishes that these four conditions were met, thus creating upon defendants the duty to (1) pay to plaintiffs the principal of the $25,000.00 note, and (2) to repurchase the equipment and the Court so tells the jury. As to the $25,000.00 note, there is no ambiguity as to what is to be done, as the contract plainly says defendants are to "pay off the principal" to plaintiffs. The jury are told this.

This left that part of the contract which was ambiguous, i.e. upon what terms was the equipment to be repurchased? The last three paragraphs leave the solution of this ambiguity up to the jury, setting forth the respective contentions and theories of the parties and outlines for the jury the alternative verdicts open to them depending upon whether they adopted, from the evidence, the plaintiffs' or the defendants' theory of the case.

## Excessiveness of Verdict

Finally, defendants contend that there is no evidence to support a verdict in excess of $25,000.00. To accept this contention the Court would be required to discard as worthless the testimony of the witness Grossberg which is precisely what defendants urge that the Court should do. Upon what basis defendants contend the Court would be justified in holding, as a matter of law, that this testimony has no probative value is unclear. Grossberg is the person whom Abady, acting for defendants, and Magazine (now deceased), acting for plaintiffs, entrusted to reduce to writing the agreement reached in the oral discussions between the parties in which the terms of the agreement were arrived at. From these discussions there appears to have been no doubt in Grossberg's mind that the "repurchase" terms agreed upon verbally between the parties as reflected in the written agreement prepared by him were that defendants reimburse to plaintiffs the $25,000.00 cash they paid representing one-half of the purchase price of $50,000.00 for the fixtures and to pay off the $25,000.00 note given as the other one-half of the purchase price. (TR. pp. 268, 269, 270.)

It would seem that Grossberg is the one person who would be in the best position to determine what was meant by the language which he himself had employed to reflect the wishes of the parties (Magazine and Abady) as expressed to him.

## Conclusion

For the above reasons, the motion to set aside the verdict will be overruled and judgment entered on the verdict.